Filed 3/11/25  P. v. Kittridge CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TREVOR CHARLES KITTRIDGE,<br><br>    Defendant and Appellant. | B331026<br><br>(Los Angeles County<br>Super. Ct. No. BA497405) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed as modified.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

After defendant and appellant Trevor Charles Kittridge literally stabbed a friend in the back, a jury convicted him of attempted murder (Pen. Code, §§ 187/664; count 1)[1] and assault with a deadly weapon (§ 245, subd. (a)(1); count 2). The jury also found true the allegations that he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)) and personally used a deadly weapon (§ 12022, subd. (b)(1)) in the commission of both offenses; it returned a "not true" finding on the allegation that the attempted murder was willful, premeditated, and deliberate.

The trial court sentenced defendant to 11 years in state prison.

In this timely appeal, defendant argues that the trial court wrongly (1) excluded photographic evidence showing the victim holding a gun and (2) gave the jury two inapplicable instructions on the doctrine of self-defense. We disagree with both contentions.

However, we agree with both parties that the abstract of judgment must be corrected to accurately reflect the jury's finding that the attempted murder was not willful, premeditated,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

and deliberate.  We modify the abstract of judgment to correct this error.  In all other respects, we affirm the judgment.

**BACKGROUND**

I.   The People's Case

Around June 6 or 13, 2021, Sunny H. (Sunny)[2] booked rooms in multiple hotels for her boss, including three rooms at a Four Seasons hotel (the Four Seasons).

On June 25, 2021, Sunny's boss was arrested.  The following day, Sunny began cleaning the vacated rooms with the help of defendant, who Sunny felt was her "closest friend."  An argument erupted when defendant said that he wanted to steal some of her boss' belongings and Sunny refused.

Sunny placed the items from her boss' rooms in her car and left the Four Seasons.  She and defendant continued fighting via text message.  Defendant became enraged, cursing Sunny and calling her racial slurs.

That night, Sunny agreed to meet defendant at the Four Seasons so that he could retrieve some of his own belongings from her car.  Sunny arrived at around midnight on June 27, 2021.  Shortly thereafter, a car drove up.  Defendant emerged from the passenger seat, and Sunny left her own car to meet him.

Defendant ran to Sunny and hugged her tightly, wrapping one arm around the back of her neck to pin her body against him.  With his free hand, he drew a knife and stabbed Sunny in the back, saying "Oh really, *****?" or "Oh, yeah, *****[.]"  He then

---

[2]   California Rules of Court, rule 8.90(b) requires appellate courts to "consider referring to" certain individuals "by first name and last initial" to protect their privacy.  Accordingly, we refer to the victim in this case by her first name and last initial, and thereafter by her first name only.  No disrespect is intended.

released her and fled to his car. At trial, Sunny estimated that the incident took no more than 20 seconds.

As defendant withdrew the knife from Sunny's back, she screamed and staggered to the Four Seasons's front entrance, bleeding profusely. Paramedics transported her to the hospital.

II.    Defendant's Case

Defendant testified in his own defense. He admitted to stabbing Sunny, but claimed that he acted in self-defense.

Defendant admitted that before meeting Sunny at the Four Seasons on the night of the stabbing, he sent her angry and offensive text messages. But upon returning to the hotel, he approached Sunny's car and calmly asked her to return his things. Sunny "started yelling and cussing" at him, prompting defendant to "thr[o]w a soda in her face" through her open car window.

Defendant claimed that Sunny then reached between her seat and the car door, grabbed a handgun, and got out of the car.[3] She pointed the gun at him, and defendant drew and swung his knife to stop her from shooting him. Sunny's own "forward momentum brought her onto the knife." When Sunny staggered away, defendant got back in his car and left.

**DISCUSSION**

I.    Alleged Evidentiary Error

Defendant argues that the trial court improperly excluded photographic evidence showing Sunny holding a gun. We review the trial court's evidentiary rulings for an abuse of discretion.

---

[3]    Sunny denied pointing a gun at defendant on the night of the stabbing; she testified that she did not have a firearm that night or "anywhere in this time frame at all."

4

(*People v. Clark* (2016) 63 Cal.4th 522, 597.)  We will "not disturb the . . . ruling unless it was arbitrary, capricious, or made in a "'patently absurd manner that resulted in a manifest miscarriage of justice.'"  [Citation.]"  (*People v. Thomas* (2023) 14 Cal.5th 327, 358.)

A.    *Relevant proceedings*

Before Sunny testified at trial, defendant attempted to introduce a photograph of her holding a gun, captioned "I love new toys" (the photo).  Defendant produced a screenshot of a temporary post (i.e., a "story") on Sunny's Instagram page featuring the photo.  The photo was not dated; the screenshot indicated that the story had been published 32 weeks before January 1, 2022 (i.e., on or around May 22, 2021).

Shortly thereafter, the prosecutor informed the trial court that he had interviewed Sunny about the photo's provenance. She said that the gun belonged to someone else and she had posed for a photo with it because she thought it was "pretty."  The prosecutor and defense counsel "presume[d]" but "did not know" that the photo had been taken in the Four Seasons.  Defendant's counsel conceded that he "could not lay the foundation and make a good-faith statement" as to when the photo was taken.

After hearing argument from both sides, the trial court excluded the photo.  The court ruled, inter alia, that the photo had minimal probative value; since it was posted roughly one month prior to the stabbing, the photo had "no temporal proximity to the date of the . . . alleged crime."  Moreover, "[t]he photo may have been taken long before it was posted and even be well beyond the . . . posted date.  Therefore, the photograph is even more temporally attenuated . . . and may well . . . take an undue consumption of time to fully address."

B.    *Applicable law*

Evidence is only admissible if it is relevant (Evid. Code, § 350), i.e., if it "ha[s] any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action" (Evid. Code, § 210).  Although "[r]elevance is a low threshold" (*People v. Battle* (2021) 11 Cal.5th 749, 799), a trial court has "'broad discretion' [citation] to 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will[,]'" as relevant here, "'necessitate undue consumption of time . . .' (Evid. Code, § 352)." (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1175–1176.)

C.    *Analysis*

Applying these legal principles, we conclude that the trial court properly excluded the photo.  Its probative value was greatly diminished by defendant's failure to establish when and where the photo was taken.  The photo was published four weeks before the stabbing, but, as the trial court pointed out, it could have been taken even earlier.  And although the prosecutor and defendant's trial counsel both "presume[d]" that the photo was taken in the Four Seasons, they conceded that Sunny's statement was unclear on this point.

Against this negligible probative value, the trial court had to weigh the substantial probability that admitting the photo would, among other things, be unduly time consuming.  (Evid. Code, § 352.)  Establishing that Sunny had access to the gun on the night of the stabbing would require lengthy inquiries into the weapon's whereabouts during the—at minimum—four weeks between the photo's posting and the stabbing.

Given the photo's marginal probative value and the substantial probability that its admission would lead to extensive questioning about side issues, the trial court did not abuse its discretion by excluding the photo.[4]

Defendant raises two arguments against this conclusion.

First, he contends that the photo is highly probative because it shows that Sunny had access to a gun at the Four Seasons, making it possible that the gun was among those items she took from her boss' rooms and placed in her car. This argument fails because it is based on mischaracterizations of the record[5] and inferences too speculative to support the photo's admission.[6] (See *People v. Daniels* (2009) 176 Cal.App.4th 304,

---

[4]     Having concluded that the trial court properly excluded the photo, we need not address defendant's arguments that the alleged error was prejudicial because it robbed him of "further support" for his self-defense claim.

[5]     For example, defendant asserts that the prosecution and defense agreed that the photo "was likely taken within [20] days of June 25, 2021." But that 20-day timeframe is when defendant's trial counsel "th[ought]" the story was posted to Instagram, not when both parties agreed the photo was taken. Defendant also claims that Sunny "admitted the [photo] was taken while she was at the Four Seasons" and that the gun "belonged to someone who was at" that hotel. Again, he is wrong; as described above, Sunny's interview with the prosecution did not specify where the photo was taken or who owned the gun.

[6]     Even if defendant had established that the photo was taken at the Four Seasons within 20 days of June 25, 2021, his theory of relevance still depends on at least four additional unsupported inferences—namely, that (1) the gun was ever in one of Sunny's boss' hotel rooms, as opposed to a common area of the hotel;

321 [a trial court properly concludes that proposed evidence "would have little probative value" when the proponent's theory of relevance "depend[s] on two layers of speculation"].)

Second, defendant argues that admission of the photo would not have caused undue consumption of time; at most, it would have led to a few "simpl[e]" questions allowing Sunny to confirm that she "had possession of [the photographed] gun while working . . . at the Four Seasons[.]"  Defendant assures us that "[p]resumably, based on [Sunny's] statements to the prosecutor prior to her testimony," she would have answered these questions in the affirmative.  We decline defendant's invitation to assume, on the strength of Sunny's ambiguous statements to the prosecutor, that she would have given straightforward, affirmative answers to his questions.

---

(2) the gun was still in one of those hotel rooms weeks after Sunny posed for a photo with it; (3) the gun was among the possessions she took from the hotel room to her car; and (4) she had not removed the gun from her car before returning to the hotel on the night of the stabbing.

8

II.     Alleged Instructional Error

Defendant asserts that the trial court erred by instructing the jury with CALCRIM Nos. 3471[7] and 3472,[8] which limit the availability of self-defense for defendants who are initial aggressors or provocateurs.  Defendant argues that these instructions do not apply here because "there was no 'fight'" prior to the stabbing.[9]

---

[7]     As given, CALCRIM No. 3471 provides:  "[A] person who starts a fight has the right to self-defense only if, one, he actually and in good faith tries to stop fighting; and two, he indicates by word or conduct to his opponent in a way that a reasonable person would understand that he wants to stop fighting and that he has stopped fighting.  [¶]  If a person meets these requirements, he then had a right to self-defense if the opponent continued to fight; however, if the defendant used only nondeadly force and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting or communicate the desire to stop to the opponent."

[8]     As given, CALCRIM No. 3472 provides:  "[A] person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force; however, if the defendant used only nondeadly force and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting."

[9]     Defendant acknowledges that his trial counsel did not object to these instructions; accordingly, he has forfeited the issue on appeal.  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 911.)  However, because defendant contends that failure to object

9

Applying de novo review (*People v. Mitchell* (2019) 7 Cal.5th 561, 579), we find no merit in defendant's claim of instructional error.  Defendant's own testimony supports the trial court's decision to give the challenged instructions.  Per defendant, after he approached Sunny's car and asked for his things, she started yelling at him, and he "threw [a soda] on her" through the open window of her car.  Only then did Sunny exit her car and point a gun at defendant, prompting him to draw a knife and, ultimately, stab her.

The act of throwing soda at Sunny arguably rendered defendant an initial aggressor or provocateur.  (See, e.g., *People v. Duchon* (1958) 165 Cal.App.2d 690, 692–693 [throwing an object that hits the victim constitutes battery]; *People v. Eulian* (2016) 247 Cal.App.4th 1324, 1327, 1334 [no error in giving provocateur instruction where a defendant "walked 40 feet to confront [the victim] in her Jeep," antagonizing her by "jabb[ing] his finger repeatedly toward" her face during a mutual verbal squabble, until she resorted to physical violence].)  Thus, the trial court did not err in giving CALCRIM Nos. 3471 and 3472.

Resisting this conclusion, defendant claims that a provocateur instruction cannot be given absent specific evidence of his intent.  But "intent[] . . . may be proven by circumstantial evidence" as long as the jury finds "that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required []intent[.]"  (CALCRIM No. 225.)

---

constituted ineffective assistance of counsel, we reach the merits of his claims.  (*People v. Crittenden* (1994) 9 Cal.4th 83, 146 [courts may consider forfeited claims to forestall ineffective assistance of counsel arguments].)

III.    Correction of Abstract of Judgment

Finally, both parties agree that the abstract of judgment erroneously states that the attempted murder was willful, deliberate, and premeditated.  As the jury made the opposite finding, we concur that this language must be stricken.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 188 ["[W]here . . . the [parties] identif[y] an evident discrepancy between the abstract of judgment and the judgment . . . the appellate court itself should order the trial court to correct the abstract of judgment"].)

**DISPOSITION**

The abstract of judgment is modified to strike the phrase "willful, deliberate, premed attm" from line one.  The trial court is directed to prepare an amended abstract of judgment reflecting this modification, and to forward a certified copy to the Department of Corrections and Rehabilitation.

As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
ASHMANN-GERST

We concur:


_____, J.
CHAVEZ


_____, J.
RICHARDSON


11