[Crim. No. 18807. Second Dist., Div. Two. July 7, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER EUGENE HAIRGROVE, Defendant and Appellant.

■■■■■■■■■■■■

■■■■■■■■■■■■

## Counsel

Richard S. Buckley, Public Defender, James L. McCormick, Lothar Schoenheit and Leighton A. Nugent, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Maury W. Corn, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**FLEMING, J.**—Hairgrove appeals his conviction for burglary (Pen. Code, § 459).

*Facts.* Frederick Brown identified Hairgrove as the man he saw getting into Comilla Leighton's automobile at 1 a.m. on 25 August 1969 in front of Brown's house in Glendale. Comilla Leighton had earlier locked her car, she did not know Hairgrove, and she had not given him permission to enter it. The rubber between the windows of the automobile had been cut and the stereo tape machine inside tampered with.

Hairgrove's defense was alibi: he was at a drive-in movie in Orange County at the time of the burglary.

*Issues.* Hairgrove contends the trial court erred, (1) in instructing the jury on aiding and abetting and on conspiracy; (2) in admitting evidence he had been released on his own recognizance; (3) in refusing to grant a new trial on the ground of newly discovered evidence.

■■ *Instructions.* Hairgrove contends it was error for the trial court to instruct the jury on aiding and abetting and on conspiracy because there was no evidence in the record to support a conviction on those grounds.

We agree these instructions had no application to the facts presented at the trial. (*People* v. *Nunez,* 7 Cal.App.3d 655, 662 [86 Cal.Rptr. 707].) Clearly, the only issue for the jury to decide was whether Hairgrove was the principal in the crime, the man who broke into the automobile. But Hairgrove must show a reasonable probability that, absent the error, a

■■■■

verdict more favorable to him would have been reached. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].) Because the erroneous instructions were so clearly inapplicable, we are convinced the jury disregarded them in reaching its verdict.

■ *Evidence of Release.* Hairgrove contends that it was prejudicial error for the prosecutor to ask him whether he had been released on bail on this burglary charge. Hairgrove argues that because a bailiff brought him to court each day and because he testified he had been released on his own recognizance in this cause, the jury must have concluded he was in custody on another criminal charge. We think it extremely unlikely a jury would connect these two unrelated incidents during the trial and draw the tenuous conclusion suggested by Hairgrove. More likely the jury would conclude that Hairgrove's release on his own recognizance indicated he was trustworthy. Certainly there is no reasonable probability that a verdict more favorable to Hairgrove would have been reached had the question of his custody status not been raised. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

■ *Newly Discovered Evidence.* Hairgrove contends the trial court should have granted his motion for a new trial on the ground of newly discovered material evidence (Pen. Code, § 1181, subd. 8). In support of his motion Hairgrove offered the declaration of Larry Spasbo, who under penalty of perjury declared that he was the one who entered the automobile on 25 August 1969 and that Hairgrove neither accompanied him nor knew anything about it. Hairgrove also offered the declaration of his attorney that the latter had no knowledge of Spasbo's willingness to confess until Hairgrove's trial had been completed.

At the hearing on the motion for a new trial Spasbo was present in court and apparently willing to testify to what he had sworn in his declaration. But the trial court effectively dissuaded him from testifying:

"THE COURT: I understand Mr. Spasbo is here. However, I do want to say to you, Mr. Spasbo, that you are not represented by counsel and this is a very serious matter and I will advise you that you are not required to give any testimony or make any statement that would incriminate you or charge you with any crime, and I have before me your affidavit in support of defendant's motion for a new trial—and in which you admit—or state in your affidavit that you entered a 1968 Pontiac Firebird automobile, the property of Carmela Jean Leighton, and of course I want to repeat that you are not required to give any testimony or make any statement that might tend to charge you with a crime or incriminate you." And later: "THE COURT: Well, I have advised him of his constitutional rights. I won't ask him to take the stand."

The prosecution then offered evidence in opposition to the motion for a new trial which consisted of the testimony of a police officer that defendant before the trial had told him Spasbo would "cop out," but that when he asked Spasbo about this the latter on two occasions told him he had nothing to do with the crime. After hearing this testimony the trial court denied the motion.

■ The grant or denial of a motion for a new trial on the ground of newly discovered evidence is a matter which lies within the sound discretion of the trial court. (*People* v. *Hill,* 70 Cal.2d 678, 698 [76 Cal.Rptr. 225, 452 P.2d 329].) In ruling on the motion the trial court should consider these relevant factors: (1) that the evidence, and not merely its materiality, is newly discovered; (2) that the evidence is not merely cumulative; (3) that it would render a different result probable on a retrial of the cause; (4) that the party could not with reasonable diligence have discovered and produced it at the trial; and (5) that these facts have been shown by the best evidence of which the case admits. (*People* v. *Williams,* 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353].)

■ The trial court apparently denied Hairgrove's motion for a new trial on the ground that Hairgrove had not shown reasonable diligence in attempting to produce Spasbo at the trial. Presumably the court reasoned that prior to the trial defendant had been told that Spasbo had committed the crime and therefore defendant should have undertaken to subpoena Spasbo as a witness. Yet there is nothing to indicate that Spasbo, prior to Hairgrove's trial, had been willing to admit to the crime. On the contrary Spasbo twice told a police officer he had nothing to do with it. We do not see how greater diligence before trial by defendant or his counsel would have altered matters to defendant's advantage, and accordingly we do not believe a denial of the motion on the ground of lack of diligence was proper. (See *People* v. *Shepherd,* 14 Cal.App.2d 513, 519 [58 P.2d 970].)

On the merits of the motion itself we express no opinion, but we believe that in reaching its decision the trial should have taken advantage of what purported to be critical new evidence. Spasbo had admitted to the crime and signed a declaration to that effect. Thus the situation which confronted the trial court at the hearing was that Hairgrove stood convicted for a crime to which Spasbo now confessed and Spasbo was present in court and willing to testify. Under these circumstances the trial court should have taken affirmative action to call Spasbo as a witness and examine him under oath. Had the court done so Spasbo's testimony might have established (a) that there was substantial merit to Hairgrove's motion, or (b) that Spasbo had perjured himself to help out a friend.

Either outcome would have contributed positively to the administration of justice. Even if Spasbo's testimony had turned out to be inclusive, at least the court would have had all available information before it in ruling on the motion for a new trial.

We think it axiomatic that a court should make every effort to hear a witness who appears in court to confess to a crime for which someone else stands convicted. Since the primary function of a trial court is to determine the true facts of the event with which it is concerned, such a witness should be encouraged to testify. When such a witness appears in court one warning against self-incrimination should suffice. A somewhat comparable situation arose in *United States* v. *Jorn,* 400 U.S. 470 [27 L.Ed.2d 543, 91 S.Ct. 547], where defendant was charged with assisting in the preparation of fraudulent income tax returns and the prospective witnesses against him were persons whose tax returns he had prepared. When the first of these witnesses was called defense counsel suggested the witness be warned of his constitutional rights. The trial court told the witness in careful detail that he need not say anything that might be used in his own subsequent prosecution. The witness expressed willingness to testify and declared he had been advised of his rights by the Internal Revenue Service. The trial court, however, said it did not believe the witness and refused to permit him to testify until he had consulted an attorney. The court then dismissed the jury. On retrial defendant obtained a dismissal of the charges on the ground of double jeopardy. In affirming the dismissal the Supreme Court concluded that the trial court had abused its discretion in refusing to hear the testimony of the witness.

The judgment is vacated and the cause remanded to the trial court with directions to rehear the motion for a new trial.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied August 2, 1971, and respondent's petition for a hearing by the Supreme Court was denied September 2, 1971.